UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DANIELS, | Case No. 24-cv-09445-HSG |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S MOTION AND ENTERING JUDGMENT IN DEFENDANT'S FAVOR** |
| SSA (INTERESTED PARTY / NEF), et al., | |
| Defendants. | Re: Dkt. Nos. 14, 15 |

Defendant Commissioner of the Social Security Administration denied Plaintiff Michael Daniels' application for Supplemental Security Income ("SSI"). Mr. Daniels seeks judicial review of that decision. For the reasons set forth below, the Court **DENIES** Plaintiff's motion for summary judgment. Dkt. No. 14 ("Mot.").

## I.   BACKGROUND

Mr. Daniels filed a petition for SSI in September 2021, with an alleged disability onset date of September 1, 2021. Dkt. No. 7, Administrative Record ("AR") 279–85. Mr. Daniels identified the following medical conditions: multiple sclerosis, schizoaffective bipolar type disorder, autism spectrum disorder, depression, anxiety, auditory and visual hallucinations, arthritis, de Quervain's tenosynovitis splint, delusions, and mood dysregulation. AR 307. His claim was denied in December 2021, and on reconsideration in August 2022. AR 148–53, 157–63.

Mr. Daniels then appealed to an Administrative Law Judge ("ALJ"), who held a hearing in November 2023. AR 41–69. The ALJ denied his benefits in January 2024, finding that Mr. Daniels did not qualify as disabled using the sequential five-step process codified in regulation. AR 15–40; 20 C.F.R. § 404.1520(a).

United States District Court
Northern District of California

*First*, under the five-step process, the ALJ must determine whether the claimant is engaging in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity is work activity that involves doing significant physical or mental activities, usually done for pay or profit, regardless of whether a profit is realized. 20 C.F.R. § 404.1572(a)–(b). If a claimant is engaged in substantial gainful activity, the claimant is not disabled. The ALJ found that Mr. Daniels had not engaged in gainful activity since September 2021. AR 21.

*Second*, the claimant must have a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. § 404.1520(a)(4)(ii), (c). The ALJ found that some of Mr. Daniels' conditions—autism spectrum disorder, major depressive disorder, attention-deficit/hyperactivity disorder, and alcohol use disorder—were severe impairments. AR 21–23.[1]

*Third*, the ALJ must determine whether the impairment is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 404.1525, 404.1526. If the impairment is sufficiently severe, then the claimant is disabled. If not, the analysis proceeds to the next step. The ALJ found that Mr. Daniels' impairments were not sufficiently severe to equal the listed impairments. AR 23–25.

*Fourth,* the ALJ must determine the claimant's "residual functional capacity" ("RFC"), or his ability to do physical and mental work activities on a sustained basis despite his limitations. 20 C.F.R. § 404.1520(a)(4)(iv), (e). In making this determination, the ALJ considers all of a claimant's impairments. 20 C.F.R. § 404.1545(b). The ALJ then matches those capacities against past relevant work within the last 15 years prior to the date of disability. 20 C.F.R. §§ 404.1520(f), 404.1560(b). If the claimant cannot perform that past work, the process proceeds to the last step.

---

[1] The ALJ found that "foreign body ingestion, dental infection, obesity, right de Quervain tenosynovitis, and multiple sclerosis" were not severe. AR 21. Mr. Daniels does not challenge this determination, and it is not addressed in this order.

United States District Court
Northern District of California

Here, the ALJ determined that Mr. Daniels has the RFC to perform a full range of work at all exertional levels, but with the nonexertional limitations that (1) "[h]e could understand remember, and carry out detailed but not complex instructions and tasks"; and (2) "[h]e could have occasional interaction with the supervisors, coworkers, and the general public." AR 25. In reaching the RFC determination, the ALJ found that Mr. Daniels' medically determinable impairments could reasonably be expected to cause his symptoms, but that his "statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence of record." AR 26. Notable here, the ALJ found a supporting opinion from Dr. Jacklyn L. Chandler, the psychological consultative examiner who evaluated Mr. Daniels in July 2022, was not fully persuasive because of limited support and inconsistencies in the evidence. AR 31. The ALJ determined that Mr. Daniels would be unable to perform any of his past relevant work given his RFC, age, education, and work experience. AR 33.

*Fifth,* the ALJ determines whether the claimant can perform any other work considering his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g). Only if the claimant is unable to do other work is he considered disabled. *Id.* The ALJ found that Mr. Daniels had the RFC to perform work in representative occupations such as "hand packager," "cleaner," and "assembler," and that he could make "a successful adjustment to other work that exists in significant numbers in the national economy." AR 34. As a result, the ALJ determined that Mr. Daniels was not disabled. *Id.*

Following this determination, the Appeals Council denied Mr. Daniels' request for review in October 2024. AR 1–7.

## II. STANDARD OF REVIEW

The Court has jurisdiction to review final decisions of the Commissioner. *See* 42 U.S.C. § 405(g) ("The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). The Court may disturb the Commissioner's decision to deny benefits only if the decision is not supported by substantial

United States District Court
Northern District of California

evidence or is based on legal error. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). The threshold for "substantial evidence" is not high: "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotation omitted). "The evidence must be more than a mere scintilla, but may be less than a preponderance." *Molina v. Astrue*, 674 F.3d 1104, 1110–11 (9th Cir. 2012) (quotation omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The Court must consider the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). The ALJ is responsible for making determinations of credibility and for resolving evidentiary ambiguities, including conflicting medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Additionally, the Court "may not reverse an ALJ's decision on account of an error that is harmless," and "[t]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina*, 674 F.3d at 1111 (quotation omitted).

## III. DISCUSSION

Mr. Daniels argues that (1) the ALJ's rejection of Dr. Chandler's opinion was not supported by substantial evidence; and (2) the ALJ erred by preventing the hearing attorney from asking the vocational expert about a relevant RFC limitation relating to Mr. Daniels' "inability to maintain adequate standards of basic hygiene, cleanliness, and neatness." Mot. at 2, 16.

### A. Dr. Chandler's Report

Dr. Chandler examined Mr. Daniels in July 2022 and concluded that (1) he was "capable of understanding, remembering, and carrying out simple, detailed, and complex job instructions without difficulty;" (2) he "may have difficulty adapting to changes in routine work settings;" (3) he was "likely to have mild difficulty maintaining attention and concentration;" (4) he was "capable of maintaining pace and persistence;" (5) he was "likely to have mild to moderate difficulty functioning under normal stress in a work setting;" (6) he "had moderate difficulty

interacting appropriately with [her];" (7) "in a less structured setting, [he] may have marked difficulty relating and interacting with supervisors and coworkers;" and (8) he was "likely to have marked difficulty dealing with the public." AR 1135. The ALJ found Dr. Chandler's opinions on Mr. Daniels' mild to moderate difficulty functioning under normal stress, difficulty adapting to changes, and marked difficulty interacting with others to be not fully persuasive. AR 31.[2]

For claims filed on or after March 27, 2017, an ALJ does not "defer or give any specific evidentiary weight, including controlling weight to any medical opinion[s] . . . ." 20 C.F.R. § 404.1520c(a). The ALJ must assess each opinion using factors codified in the regulation. *Id.* § 404.1520c(b)(1). The only factors the ALJ is required to consider are consistency and supportability. *Id.* § 404.1520c(b)(2). The ALJ "must articulate how persuasive [she] finds all of the medical opinions from each doctor or other source, and explain how [she] considered the supportability and consistency factors in reaching these findings." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) (internal citation and quotation omitted) (cleaned up).[3] Consistency assesses whether a medical opinion or finding is congruent "with the evidence from other medical sources and nonmedical sources in the claim," while supportability addresses whether the medical opinions are backed up by objective findings and observations. 20 C.F.R. § 404.1520c(c)(1)–(2).

Applying the deferential standard that controls here, the Court finds the ALJ did not commit reversable error in her consideration of Dr. Chandler's opinion. The ALJ determined that Dr. Chandler's opinion was "not fully persuasive." AR 31. She first concluded that Dr. Chandler's findings that Mr. Daniels was likely to have mild to moderate difficulty functioning under normal stress were "vague and not well supported" and inconsistent with "the minimal mental status examination findings and good activities of daily living with only rare increased symptom[] reports in the record." *Id.* Next, the ALJ held that Dr. Chandler's opinion on Mr. Daniels' difficulty adapting to changes in work settings was "not well supported," inconsistent "with the intellectual and mental status examination scores in her evaluation," and inconsistent

_____

[2] Mr. Daniels does not challenge the ALJ's findings on the rest of Dr. Chandler's evaluation.

[3] An ALJ is no longer required to "provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion." *Woods*, 32 F.4th at 792 (quotation omitted).

United States District Court
Northern District of California

"with the good activities of daily living reported by the claimant." *Id.* Finally, the ALJ concluded that Dr. Chandler's opinion on Mr. Daniels' marked difficulty in interacting with others was somewhat supported by "the noted issues with social reciprocity" but was "not consistent with the minimal similar findings during treatment and also inconsistent with his ability to maintain family and romantic relationships." *Id.* Specifically, the ALJ held that the "objective medical and other evidence in the longitudinal record [was] inconsistent with a marked limitation in this area." *Id.* As required, the ALJ explicitly addressed whether she found each part of Dr. Chandler's opinion persuasive and explained her findings for supportability and consistency. *Woods*, 32 F.4th at 792.

Mr. Daniels argues that this conclusion was not supported by substantial evidence, primarily by arguing that the ALJ mischaracterized his mental status examination findings as "minimal," his activities of daily living as "good," and his increased symptom reports as "rare." Mot. at 5. The Court disagrees.

There was substantial evidence that Mr. Daniels had minimal mental status examination findings. The ALJ reviewed treatment records from June 3, 2022 to November 4, 2022 and found that Mr. Daniels "had consistently normal mental status examination findings, with fair hygiene, normal attention and concentration, normal psychomotor function, regular speech and language, good eye contact, and an OK mood," and that he repeatedly "denied psychotic thought content, current suicidal or homicidal ideation, and had fair judgement and insight, with adequate fund of knowledge" during that time. AR 27 (citing AR 1230–31); *see also* AR 28 (citing AR 1149–50, 1169–70, 1182–83). Those reports remained "entirely normal" despite some increased symptoms in August, September, and November 2022. AR 28. The ALJ then reviewed Mr. Daniels' mental status examinations through August 2023 and concluded that they were also largely normal, while recognizing that Mr. Daniels had some notable but inconsistent findings relating to mood, affect, speech, fidgeting, and eye contact. AR 29 (citing AR 1301, 1417, 1425–26).

Mr. Daniels argues that the ALJ overlooked a long list of mental status examination evidence, including evidence of Mr. Daniels' auditory and visual hallucinations. Mot. at 6–7. First, in interpreting the evidence in the record, ALJs are not required to address every piece of evidence, *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003), nor must they

"perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits," *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). However, the ALJ must explain why "significant probative evidence has been rejected." *Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984). Here, the ALJ carefully considered Mr. Daniels' mental status examinations between June 2022 and August 2023, acknowledging some competing evidence where appropriate. In fact, the ALJ specifically addressed many of the record citations that Mr. Daniels mentions in his motion. *Compare* Mot. at 6–7 (citing "robotic prosody," "fidgety with psychomotor restlessness," and discussing his mood, affect, and speech), *with* AR 28–29 (discussing how "[h]is prosody was noted as robotic and he spoke in an overly formal manner" and "[h]e was fidgety," and noting "some mood, affect, and speech findings").[4] Second, to the extent Plaintiff is advocating for an alternative interpretation of the evidence in the record, the Court is not allowed to second-guess the ALJ's reasonable interpretation, even if such evidence could also support inferences more favorable to Mr. Daniels. *Molina*, 674 F.3d at 1110; *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion.").[5]

There was also substantial evidence that Mr. Daniels had good activities of daily living. The ALJ considered Mr. Daniels' October 2021 function report, where Mr. Daniels stated that he was anti-social but played musical instruments, sang, watched YouTube, babysat his nieces and nephews, went to church, prepared his own meals, shopped in stores, and spoke with his family. AR 26 (citing AR 336–41). The ALJ also considered Dr. Chandler's own report, which found that

---

[4] To the extent Mr. Daniels is specifically arguing that the ALJ failed to consider evidence about his auditory and visual hallucinations, the Court disagrees. For example, the ALJ noted that Mr. Daniels reported auditory hallucinations in the September and October 2022 neuropsychological evaluations. AR 28. But the ALJ also noted that the reported hallucinations were inconsistent with Dr. Chandler's own report in July 2022. *Id.* (citing AR 1133). The Court does not find this conclusion unreasonable or unsupported, particularly where the 2022 and 2023 mental status examinations were also inconsistent with reports of hallucinations. *See, e.g.*, AR 1231.

[5] In addition, much of the evidence cited by Mr. Daniels comes from treatment notes that—unlike the notes considered by the ALJ—were written prior to the date of the claimed disability. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance.").

United States District Court
Northern District of California

Mr. Daniels could perform most activities of daily living with restrictions related to anxiety, and that he was able to drive a car, do simple household chores, prepare something simple to eat, and shop unattended. AR 24 (citing AR 1133). The ALJ acknowledged Mr. Daniels' hearing testimony that, by late 2023, his activities of daily living were reduced, including that he played guitar less, had stopped performing magic, needed noise canceling headphones when grocery shopping, and had stopped looking after his nieces and nephews. AR 26. But she concluded that this testimony was inconsistent with the medical evidence, including further testimony that Mr. Daniels had a girlfriend, AR 51, socialized with "staff and peers," and continued to play guitar and do some magic into 2023, AR 1258, 1359. *Cf. Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." (quotation omitted)).

Mr. Daniels claims that the ALJ failed to address repeated references to poor hygiene. Mot. at 7–8. The Court disagrees. The ALJ discussed that Mr. Daniels had testified to issues maintaining his own hygiene, AR 26, and referenced reports stating the same, AR 27 (citing AR 992).[6] But the ALJ found that, while Mr. Daniels "attested to problems maintaining hygiene, . . . this . . . was not indicated in his mental status examinations." AR 27, 29 (citing AR 1230–31); *see also Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

Mr. Daniels also argues that the ALJ did not address testimony and reports that were contradictory to the ALJ's findings that he had good activities of daily living and could maintain family and romantic relationships, including evidence of stress, depression, and intrusive memories about the passing of his son. Mot. at 15–16. But Mr. Daniels also acknowledges that the ALJ cited most of these symptoms in her decision. Mot. at 16 (citing AR 27). Again, this Court may not overturn the ALJ's substantially supported decision just because some specific references weren't cited, and the Court may not substitute its judgment for the ALJ's where her decision was reasonable.

---

[6] Several of these citations overlap with those that Mr. Daniels claims the ALJ failed to address. Mot. at 7–8.

Finally, there was substantial evidence that Mr. Daniels only had rare increased symptom reports. In Dr. Chandler's July 2022 report, she noted that Mr. Daniels' "psychiatric symptoms appear[ed] to be mostly controlled by medication." AR 28, 1135. The ALJ noted that there were "some increased symptoms" beginning around August 2022. AR 28. By September and October 2022, Mr. Daniels had some depressive symptoms, but active psychotic symptoms "were not part of his clinical picture." AR 28 (citing AR 1141).[7] Mr. Daniels then reported improvement in November 2022. AR 28 (citing AR 1146–47). Finally, the ALJ concluded that "[d]espite some evidence of alcohol use, including reportedly swallowing a SIM card while intoxicated . . . , he had only short lived increased symptom reports." AR 29.

Mr. Daniels argues that the ALJ mischaracterized evidence of his psychiatric symptomology. Mot. at 8–14. First, Mr. Daniels points to records of his suicidal ideation from an emergency hospitalization in July 2020. Id. at 8–9. But these records come from before the beginning of the claimed disability period, and the ALJ did not err by focusing on records from on or after September 2021. Carmickle, 533 F.3d at 1165.[8] Second, Mr. Daniels cites a January 2023 hospitalization, where Mr. Daniels went to the emergency department on the anniversary of his son's death because he was suicidal and experiencing intrusive visual images. Mot. at 9–10. However, the ALJ did consider this hospitalization (and the 2020 hospitalization), observing that "[o]utside of short lived treatment after the prior ALJ decision with a 5150 and a two day admission in early 2023, notably around increased alcohol use, he rarely reported suicidal ideation and had quite minimal mood and symptoms report." AR 29. Finally, Mr. Daniels argues that the record "is replete with references to . . . exacerbation of worsening psychiatric symptomology." Mot. at 10–14. As before, most of these citations are from records before the alleged onset date, and the Court is not persuaded that the ALJ's determination was unreasonable or unsupported in

---

[7] This is something of an oversimplification, as the report stated that "[a]ctive psychotic symptoms do not appear to be a prominent part of his clinical picture at this time, although at times his ability to concentrate and attend may be impaired and he also may entertain some ideas that people find unusual." AR 1141.

[8] Mr. Daniels himself cites medical records from this stay suggesting that he was no longer suicidal on July 26, 2020. AR 529, 537.

United States District Court
Northern District of California

the face of these additional records.

Given the above, the Court concludes that there was substantial evidence supporting the ALJ's consistency and supportability analysis.  At bottom, Mr. Daniels asks this Court to reweigh the evidence, without pointing to symptomology or evidence that the ALJ did not consider at all.  While the Court is respectful of Mr. Daniels' experiences, the threshold for substantial evidence is low.  Here, this is more than a scintilla of evidence, *Molina*, 674 F.3d at 1110–11, and "[i]t is not the court's role to 'second-guess' an ALJ's reasonable interpretation of a claimant's testimony," *Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022).  *Cf. Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996) (affirming decision where ALJ considered daily activities, notes of treating therapist, and evidence suggesting plaintiff responded well to treatment for depression, even if "the findings upon which this determination was based were not as extensive as they might have been").

It may be the case that the ALJ could have been more specific about how the mental status examinations, activities of daily living, and increased symptom reports were inconsistent with Dr. Chandler's testimony, *see* Mot. at 5, or about how Dr. Chandler's findings were unsupported.  But the Court can look to the entire decision to determine whether the ALJ's decision is adequately supported, *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022), and the ALJ clearly linked specific medical evidence to her discussions of mental status examinations, activities of daily living, and increased symptom reports.  And "[e]ven when an agency explains its decision with less than ideal clarity, [the Court] must uphold it if the agency's path may reasonably be discerned." *Molina*, 674 F.3d at 1121 (quotation omitted).[9]

---

[9] There are also limitations to what an ALJ can say when they are observing a lack of evidentiary support.  Where there was partial support for some of Dr. Chandler's findings, such as in the marked difficulty interacting with others, the ALJ specifically identified what that support was.  AR 31.  And having reviewed Dr. Chandler's report, the Court cannot conclude that the ALJ's supportability findings were unreasonable.  AR 1132–35; *cf. King v. Comm'r of SSA*, 475 F. App'x 209, 210 (9th Cir. 2012) (non-precedential case finding that ALJ properly rejected report in part because it was "too vague to be useful").

**B.      Questioning and Limitations About Hygiene**

Mr. Daniels argues that the ALJ prevented his attorney from asking the vocational expert, Ms. Chandler, about a limitation relating to his inability to maintain basic standards of hygiene, neatness, and cleanliness.  Mot. at 16–17.  The following exchange took place at the hearing:

> **ATTY**: If this hypothetical claimant in all of the hypotheticals had no ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness would any of the jobs you have listed be available?
> **ALJ**: That is a bit vague.  I couldn't adopt that in an RFC.  Could you be more specific?
> **ATTY**: They had very poor personal hygiene.
> **ALJ**: Okay.  What do you mean by socially appropriate?
> **Atty**: Let's just X that out and say they can't adhere to basic standards of neatness and cleanliness.
> **ALJ**: Again, I am not sure how that adheres, that creates a functional limitation.
> **VE**: It sounds more like employer expectations and that is kind of an off –
> **ALJ**: Right.  I don't know how to phrase that honestly, which is why I'm – I think I could phrase the socially appropriate but for the basic standards of neatness and cleanliness, I mean, you could say, I guess to the extent that customers are complaining.  But again, I am not sure how I could adopt that, because how is that a functional limitation?
> **ATTY**: Okay.  Well, that was my question, Your Honor.
> **ALJ**: All right.  Well I understand that Ms. Chandler said no.  But again, you said, Ms. Chandler, to be clear, that would be an employer expectation.
> **VE**: Correct.
> **ALJ**: Okay.  All right.  Anything else, Mr. Ishikawa?
> **ATTY**: No.

AR 68–69.

As an initial matter, the Court disagrees that the ALJ prevented the attorney from asking questions about a limitation relating to hygiene.  The ALJ asked the attorney to clarify his original question and then ultimately asked Ms. Chandler to confirm the ALJ's understanding that this was an employer expectation rather than a functional limitation.  The ALJ also gave the attorney an additional chance to ask other questions, and the attorney declined.

However, to the extent Mr. Daniels is arguing that the ALJ should have included failure to adhere to basic standards of neatness and cleanliness as a functional limitation, the Court disagrees that this was a harmful legal error.  "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding

United States District Court
Northern District of California

that the claimant can perform jobs in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quotation omitted). As discussed earlier, the ALJ considered Mr. Daniels' testimony that he had "some problems maintaining his own hygiene, such as not showering." AR 26; *see also* AR 27 (citing AR 992). The ALJ found that, while Mr. Daniels "attested to problems maintaining hygiene, . . . this also was not indicated in his mental status examinations," AR 28–29 (citing AR 1230–31), or his September 2022 and October 2022 neuropsychological evaluations, AR 28 (citing AR 1139). Mr. Daniels cites a handful of references to his testimony, Mot. at 17, but the ALJ considered the testimony and rejected it in light of contradictory mental status examinations. *Carmickle*, 533 F.3d at 1161. Mr. Daniels also cites a handful of mental status examinations in early 2022 finding poor hygiene. Mot. at 17. As before, the Court will not question the ALJ's determination here, where it was supported by substantial evidence and where the ALJ considered significant contrary evidence.[10]

## IV.    CONCLUSION

The Court **DENIES** Plaintiff's motion for summary judgment, Dkt. No. 14. The Court affirms the Commissioner's decision below. This order **TERMINATES** the Defendant's brief,

---

[10] The Commissioner suggests that hygiene cannot be considered in the RFC assessment. Dkt. No. 15 at 6. The Ninth Circuit has held in a non-binding, non-precedential opinion that "[t]he ALJ was not . . . required to include in the hypothetical a limitation relating to [plaintiff's] personal hygiene because body habitus is not a factor in assessing residual functional capacity." *Hartman v. Comm'r of Soc. Sec. Admin.*, 291 F. App'x 818 (9th Cir. 2008) (citing SSR 96-8p). It's true that SSR 96-8p states that "[a]ge and body habitus are not factors in assessing RFC." But that seems to be referencing issues like "natural body build, . . . size, and weight, insofar as they are unrelated to the individual's medically determinable impairment(s)." *Id.* As a result, it seems at least possible that hygiene issues *related to* or *caused by* an individual's impairment might be considered.

For example, in *Hanke v. Commissioner, Social Security Administration*, No. 3:12-CV-00598-KI, 2013 WL 840192 (D. Or. Mar. 6, 2013), there was extensive evidence that the plaintiff faced significant symptom-related hygiene issues and had lost or nearly lost jobs because of those issues. *Id.* at *7. On that record, the district court remanded, also noting that the vocational expert had confirmed that the plaintiff would not be able to work if she were "unable to maintain acceptable standards of hygiene on a routine basis." *Id.* at *7.

Given all this, it may be an unresolved question whether poor hygiene could under some circumstances create a functional limitation. But since there was inconsistent evidence about Mr. Daniels' hygiene, which the ALJ considered and rejected, the ALJ was not required to include this in the hypothetical to the vocational expert.

Dkt. No. 15.  The Clerk is **DIRECTED** to enter judgment in favor of Defendant and close the case.

**IT IS SO ORDERED.**

Dated:    2/17/2026

HAYWOOD S. GILLIAM, JR.
United States District Judge